# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5698-18T2

T.L.B.,

    Plaintiff-Respondent,

v.

M.F.M.,

    Defendant-Appellant.

_____

Submitted May 28, 2020 – Decided June 16, 2020

Before Judges Alvarez and DeAlmeida.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FV-12-0164-20.

LaRocca Hornik Rosen Greenberg & Crupi, LLC, attorneys for appellant (Frank J. La Rocca, on the brief).

Respondent has not filed a brief.

PER CURIAM

Defendant M.F.M.[1] appeals from a July 22, 2019 final restraining order (FRO) entered by the Family Part pursuant to the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -35. We affirm.

I.

The following facts are derived from the record of the trial court hearing, at which plaintiff was the only witness. Defendant and plaintiff T.L.B. were in a dating relationship for approximately four months. On the night in question, the two were at plaintiff's apartment with her three-year-old child. While plaintiff attempted to put her child to bed, defendant was working on his computer and drinking cocktails. Defendant made a remark about the child's disability, causing plaintiff to ask him to leave her apartment. Defendant refused to leave. She twice more asked defendant to leave. He twice more refused.

Plaintiff reached for her cellphone, which was on a nearby table, telling defendant she would call the police if he did not leave. Defendant grabbed plaintiff's phone before she could reach it and put it in the pocket of his shorts. Plaintiff told defendant to leave her home for a fourth and fifth time. Defendant refused each demand, saying "I'm not going anywhere."

---

[1] We use initials to preserve the confidentiality of court records concerning domestic violence. R. 1:38-3(d)(9).

A-5698-18T2

When plaintiff told defendant to leave for a sixth time, he stood up, approached her, and pushed his finger into her face. While doing so he said, "don't ever fucking yell at me again." Plaintiff demonstrated to the court that defendant used sufficient force to push the skin from her check almost up to her right eye.

Plaintiff then "looked [defendant] dead in the eye and . . . told him to get out of my house." Defendant said no. Plaintiff then began screaming "help" as loud as she could. This caused her son to come out of his room, crying "hysterically."

Defendant put his hand over plaintiff's mouth and nose and told her to "shut up." Plaintiff wound up on the floor, she does not know how, with defendant on top of her. She tried to pull his arm off of her face and his hand off of her mouth while screaming as loud as she could and struggled unsuccessfully to get out from under defendant's body.

Plaintiff managed to get her hand into defendant's pocket and grabbed her phone. In the struggle for control of the phone, she was able to get out from under defendant. Plaintiff picked up her son, grabbed her car keys, and fled the apartment. She drove to the local police headquarters to report the assault.

A-5698-18T2

Plaintiff sustained a cut on her nose and cuts on her fingers while struggling to break free from defendant. The injury to her nose was caused by defendant's fingernail and was bleeding. Photographs of plaintiff's injuries were admitted into evidence.

Although defendant had not previously been physically aggressive with plaintiff, he had been verbally aggressive toward her. Defendant previously instructed plaintiff not to have a presence on social media and to activate a location feature on her phone so he could monitor her whereabouts. Defendant also blocked plaintiff from exchanging text messages with men with whom she had professional relationships.

When asked if she feared defendant would return to harm her, plaintiff testified that she "sleep[s] with a bar under [her] door every night." In addition, plaintiff keeps the shades drawn on her apartment windows to keep anyone from seeing in from the street.

At the conclusion of plaintiff's case-in-chief, defendant's counsel had the following exchange with the court:

> [COUNSEL]: [I]f the plaintiff rests I would make a motion, but I think my client is going to exercise his Fifth Amendment rights to save himself from self-incrimination and not testify.

A-5698-18T2

> THE COURT: Okay. I don't want to put words in your mouth. I think you just indicated you think your client is going to do that. Do you want to confer with him and make sure?
>
> [COUNSEL]: Yes, Judge, [M.F.M.] indicates that he's not intending to testify.
>
> THE COURT: Okay. And you have no other witnesses, correct?
>
> [COUNSEL]: Correct, Judge.

Defendant's counsel thereafter moved for dismissal pursuant to Rule 4:37-2(b). At the close of argument, defense counsel and the court engaged in the following exchange:

> THE COURT: Procedurally, just so the record is clear, because again technically a motion to dismiss [sic], but I just want to be clear . . . . Your client is invoking his Fifth Amendment right, irrespective of whether the Court grants the motion or denies the motion.
>
> [COUNSEL]: Correct, Judge.
>
> THE COURT: Okay. In other words the Court will treat it essentially as a motion to dismiss or really even as a summation from a practical standpoint.

The court thereafter issued its opinion. Rather than treating plaintiff's testimony as true, as is required to decide a motion under Rule 4:37-2(b), the court evaluated plaintiff's testimony and found her to have been credible. The

5

court thereafter concluded defendant committed the predicate act of assault as defined in N.J.S.A. 2C:12-1(a)(1) when he purposely, knowingly, or recklessly caused injuries to plaintiff's nose and fingers by holding his hand over her mouth and nose and struggling with her on the floor. The court also concluded defendant committed assault as defined in N.J.S.A. 2C:12-1(a)(3) when he put plaintiff in fear of imminent serious bodily injury by taking her phone and covering her mouth and nose while she was trying to call for help.[2]

With respect to plaintiff's need for protection from imminent danger or further abuse by defendant, the court considered: (1) that plaintiff was sufficiently alarmed by the assault to place a bar under her apartment door and keep her shades drawn; (2) the severity of the injuries inflicted on plaintiff; (3) defendant's consumption of alcohol just prior to the incident; (4) the presence of a minor during the assault; (5) defendant's attempt to prevent plaintiff from seeking help during the assault; and (6) that defendant is more physically empowering and intimidating than plaintiff. The court concluded plaintiff was in fear of defendant and that a final restraining order was necessary to protect her from future abuse.

---

[2] The court did not address whether defendant committed assault by putting his finger on plaintiff's face and pushing the skin of her cheek up to her eye.

A-5698-18T2

Based on these conclusions, on July 22, 2019, the court denied defendant's motion and entered an FRO against M.F.M.

This appeal followed. M.F.M. raises the following arguments for our consideration:

> POINT I
>
> THE TRIAL COURT ERRED BY FAILING TO RULE UPON THE MOTION TO DISMISS PRIOR TO ISSUING A FINAL DECISION.
>
> POINT II
>
> THE TRIAL COURT ERRED BY DEPRIVING DEFENDANT OF HIS RIGHT TO MAKE A CLOSING STATEMENT.
>
> POINT [III]
>
> THE PLAINTIFF DID NOT MEET THE FIRST PRONG OF SILVER.
>
> POINT [IV]
>
> THE TRIAL COURT ERRED IN FINDING THE PLAINTIFF MET THE SECOND PRONG OF SILVER.
>
> A. THE TRIAL COURT'S FINDINGS THAT PLAINTIFF IS IN FEAR OF DEFENDANT FAIL TO COMPLY WITH RULE 1:7-4(a).
>
> B. THE TRIAL COURT ERRED BY FINDING THAT PLAINTIFF MET THE REQUIRED FACTORS OF N.J.S.A. 2C:25-19(a).

A-5698-18T2

C. PLAINTIFF IS NOT IN FEAR OF DEFENDANT AND ANY ALLUSION TO FEAR WAS INAPPROPRIATELY [EL]ICITED BY THE TRIAL COURT.

D. NO PRIOR HISTORY OF DOMESTIC VIOLENCE EXISTS BETWEEN PLAINTIFF AND DEFENDANT.

On September 4, 2019, the trial court issued a letter amplifying its decision pursuant to Rule 2:5-1(b).

## II.

"In our review of a trial court's order entered following trial in a domestic violence matter, we grant substantial deference to the trial court's findings of fact and the legal conclusions based upon those findings." D.N. v. K.M., 429 N.J. Super. 592, 596 (App. Div. 2013) (citing Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). We should not disturb the "'factual findings and legal conclusions of the trial judge unless [we are] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Cesare, 154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974)). Deference is particularly appropriate when the evidence is testimonial and involves credibility issues because the judge who observes the witnesses and hears the testimony has a perspective the reviewing court does not enjoy.

Pascale v. Pascale, 113 N.J. 20, 33 (1988) (citing Gallo v. Gallo, 66 N.J. Super. 1, 5 (App. Div. 1961)).

The entry of an FRO requires the trial court to make certain findings. See Silver v. Silver, 387 N.J. Super. 112, 125-27 (App. Div. 2006). The court "must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19[(a)] has occurred." Id. at 125. The court should make this determination "'in light of the previous history of violence between the parties.'" Ibid. (quoting Cesare, 154 N.J. at 402). Assault, as defined by N.J.S.A. 2C:12-1, is a predicate act of domestic violence under N.J.S.A. 2C:25-19(a)(2).

Next, the court must determine "whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29[(a)](1) to -29[(a)](6), to protect the victim from an immediate danger or to prevent further abuse." Id. at 127 (citing N.J.S.A. 2C:25-29(b)); see also J.D. v. M.D.F., 207 N.J. 458, 476 (2011). This determination requires evaluation of:

> (1) The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse;
>
> (2) The existence of immediate danger to person or property;

(3)    The financial circumstances of the plaintiff and defendant;

(4)    The best interest of the victim and any child;

(5)    In determining custody and parenting time the protection of the victim's safety; and

(6)    The existence of a verifiable order of protection from another jurisdiction.

[N.J.S.A. 2C:25-29(a); <u>see also</u> <u>Cesare</u>, 154 N.J. at 401.]

Here, the trial court determined M.F.M. committed two predicate acts of assault, one under N.J.S.A. 2C:12-1(a)(1) and one under N.J.S.A. 2C:12-1(a)(3). On the relevant date, the statute provided:

A person is guilty of assault if he:[3]

(1)    Attempts to cause or purposely, knowingly or recklessly causes bodily injury to another; or

. . . .

(3)    Attempts by physical menace to put another in fear of imminent serious bodily injury.

[N.J.S.A. 2C:12-1(a).]

---

[3]  A 2019 amendment to the statute removed gender-specific references. <u>L.</u> 2019, <u>c.</u> 219, § 3 (eff. Dec. 1, 2019).

"'Bodily injury' means physical pain, illness or any impairment of physical condition . . . ."  N.J.S.A. 2C:11-1(a).

Our review of the record reveals it contains ample competent, relevant and reasonably credible evidence supporting the trial court's determination that defendant assaulted plaintiff under both provisions of N.J.S.A. 2C:12-1(a).  As a result of defendant putting his hand on plaintiff's mouth and nose, using his body weight to prevent her from getting off the floor, and struggling with her for control of her phone, plaintiff suffered a cut to her nose that drew blood, as well as cuts on her fingers.  These injuries, which are evidenced by photographs in the record, were either purposely, knowingly, or recklessly inflicted by defendant and constitute bodily injuries within the meaning of N.J.S.A. 2C:11-1(a).

In addition, the record supports the trial court's conclusion defendant used physical menace to instill a fear of imminent serious bodily injury in plaintiff. In response to plaintiff announcing she intended to call the police, defendant grabbed her phone, placed it out of her reach, put his hand over her mouth, and used his body in an attempt to keep her from escaping.  The import of defendant's actions was clear:  he intended to use physical force to keep plaintiff from calling the police, screaming for help, or leaving the apartment.  A person in plaintiff's

A-5698-18T2

position reasonably would have feared defendant intended to inflict serious physical harm on her if she continued to attempt to escape his control.

We have carefully reviewed defendant's procedural arguments. We agree at the close of plaintiff's case the trial court conflated its duty to resolve defendant's motion to dismiss with its obligation to evaluate the evidence adduced at trial to determine whether entry of an FRO was warranted. However, after defendant's counsel confirmed that he did not intend to call any witnesses regardless of the outcome of the motion, the court announced its intention to treat his argument on the motion as defendant's summation and render a decision as if the record had been closed. Because defendant's counsel did not object, we review the record under the plain error standard for an error "clearly capable of producing an unjust result . . . ." State v. Whitaker, 200 N.J. 444, 465 (2009) (quoting R. 2:10-2).

We see no such error here. Defendant argues the trial court's immediate resort to weighing the evidence instead of deciding the motion to dismiss denied his counsel the opportunity to make a summation concerning the credibility of plaintiff's testimony, which he did not address in his argument on the motion to dismiss. While the distinction between a summation and an argument in support of a motion to dismiss is meaningful, given the significant and uncontradicted

evidence establishing defendant's assaults on plaintiff, defendant's concession that he did not intend to introduce any further evidence, and the unequivocal conclusion of the trial court that plaintiff testified truthfully, it is unlikely summation by defendant's counsel would have changed the outcome of the hearing.

We have reviewed defendant's remaining arguments and conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5698-18T2